UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TERRY HANNER,**

       **Plaintiff,**   Case No. 03-74675

**vs.**   HONORABLE DENISE PAGE HOOD

**MICHIGAN STATE POLICE**
**MOTOR CARRIER OFFICER**
**BRETT BLACK,**

       **Defendant.**

_____/

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment Pursuant to FRCP 56(c) filed August 12, 2005. Plaintiff filed his Response to Defendant's Motion for Summary Judgment on September 2, 2005.

Plaintiff Terry Hanner [hereinafter "Plaintiff"] alleges in his Complaint filed on November 20, 2003, five counts against Defendant Michigan State Police Motor Carrier Officer Brett Black [hereinafter "Defendant']. The claims are: (1) 42 U.S.C. § 1983 - Fourth Amendment violation based upon the absence of probable cause to arrest the Plaintiff; (2) 42 U.S.C. § 1983 - Fourth Amendment violation for use of excessive force by Defendant in the course of Plaintiff's arrest; (3) false arrest; (4) false imprisonment; and (5) assault and battery.

In his Motion, the Defendant asks this Court to grant the Motion for Summary Judgment because he alleges that Plaintiff cannot sustain his 42 U.S.C. § 1983 claims based two theories: (1) collateral estoppel applies because a magistrate judge found probable cause existed for Plaintiff's arrest; and (2) that Defendant is entitled to qualified immunity in the discharge of his duties. Defendant also requests summary judgment on the remaining state court claims as they are not subject to the jurisdiction of this Court, or alternatively, that they are not actionable in the event probable cause to arrest exists.

## II.  STATEMENT OF FACTS

On or about April 2, 2003, Plaintiff was driving on I-94 toward Chicago and was pulled over for speeding by Defendant. (Pls. Comp. ¶ 4; Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 10). Defendant approached Plaintiff's truck, stepped onto the truck's running board on the passenger side, and asked Plaintiff for his license. (Pls. Comp. ¶ 6; Def. Black's Answer to Comp. ¶ 6). As a result of the traffic stop, Plaintiff was arrested by Defendant and was cited for speeding, for his vehicle log book not being current (Pls. Comp. ¶ 12), and charged with resisting and obstructing a police officer. (Def.'s Mtn. For Summ. J. Pursuant to FRCP 56(c) at 6). Plaintiff was acquitted of the charge of resisting and obstructing a police officer. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 6).

## III.  STANDARD OR REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV. APPLICABLE LAW & ANALYSIS

### 1. Contested Facts

A review of the affidavits of Plaintiff and Defendant reveals the following contested facts. When the Defendant approached the Plaintiff's passenger door and knocked, the Plaintiff asserts that the Defendant opened the passenger side door and stepped into his vehicle. (Pls. Resp. To Def.'s

3

Mtn. for Summ. J., Ex. A - Dep. of Pls. at 39). Defendant states that Plaintiff did not immediately open the car door, that Plaintiff was looking at Defendant with the aid of the side mirror, and did nothing. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 18). Plaintiff asserts that once Defendant was in his vehicle, Defendant requested Plaintiff's driver's licence and DOT card which he produced but that Defendant would not accept. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 39-40). Plaintiff also requested that the Defendant get out of his vehicle. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 40). Defendant states that when he asked for Plaintiff's driver's licence and DOT card, Plaintiff refused and instead responded with an expletive demanding that Defendant remove himself from the Plaintiff's truck. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 20). Defendant indicates that he asked for Plaintiff's driver's licence and DOT card an additional two times and received the same response. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 20-21). Plaintiff admits that Defendant asked for his driver's licence and DOT card an additional two times, but asserts that he produced the items, and the Defendant refused to accept them. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 40-41). Defendant indicates that he then ordered Plaintiff out of the truck, which Plaintiff refused to do. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 21). Plaintiff asserts that Defendant informed Plaintiff that he was "going to jail," and that Plaintiff then stepped out of the vehicle. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 40-41). Plaintiff states that as he was climbing out of the truck and turning to shut the door and lock it, Defendant grabbed him from behind in a choke hold, grabbed an arm, struck his leg, and threw Plaintiff to the ground. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 41-42). Plaintiff also asserts that once the Defendant told him that he was arrested, he followed his instructions. (Pls. Resp. To Def.'s

Mtn. for Summ. J., Ex. A - Dep. of Pls. at 42). Defendant asserts that once Plaintiff climbed out of the truck, Plaintiff and Defendant were standing next to one another. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 26-29). When Plaintiff attempted to close his passenger side door, Defendant prevented this from happening, and Plaintiff "took his right hand and shoved me in the chest." (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 26-29). Defendant states that Plaintiff pushed him with the same hand that contained Plaintiff's wallet. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 30). Defendant indicates that after Plaintiff shoved him, Defendant attempted to restrain Plaintiff, but Plaintiff resisted. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 37-39). Due to Plaintiff's resistance, Defendant states that he administered a peroneal nerve strike which caused both Plaintiff and Defendant to fall. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 41). Defendant asserts that after he and Plaintiff fell into a shallow ditch, Defendant was able to subdue Plaintiff. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 42-46). Defendant states that he then spoke to Mr. Marsten, a truck driver who had stopped his vehicle and approached the scene. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 52-54).

### 2. Collateral Estoppel

Defendant asserts that there are no material issues of fact in dispute as to the existence of probable cause, and the Plaintiff is collaterally estopped from relitigating the issue of probable cause to arrest in the 42 U.S.C. § 1983 cause of action. (Def.'s Mtn. For Summ. J. Pursuant to FRCP 56(c) at 15). Where a party has had a full and fair opportunity to litigate an issue at an earlier proceeding, the party is precluded from relitigating the same issue in a later federal case. *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of*

*Bradford*, 245 F.3d 869, 874 (6th Cir. 2001). In *Coogan*, a real estate developer was charged with a felony by the City. *Id.* at 170. The Wixom police department investigated two fires that occurred at the offices of the real estate developer, and delivered the file to the county prosecutor's office. *Id.* at 171-172. A preliminary hearing was conducted before a state district judge who found probable cause to believe that a felony had been committed, and that the real estate developer had committed it. *Id.* at 172. Later, the prosecution of the real estate developer was dismissed by the circuit court for failure to meet speedy trial requirements. *Id.* The real estate developer then brought an action against the city for malicious prosecution, infliction of emotional distress, and violation of his constitutional rights under 42 U.S.C. § 1983. The Sixth Circuit held that the real estate developer was collaterally estopped from raising the issue of probable cause in his 42 U.S.C. § 1983 claim for malicious prosecution where the developer had unsuccessfully contested the issue of probable cause at the preliminary hearing, which was an adversary proceeding under Michigan law, and again in state circuit court, after the examining judge had bound him over. *Id.* at 170.

Plaintiff asserts that there are issues of material fact that are in dispute with both parties providing disparate versions of the events. (Pls. Resp. To Def.'s Mtn. for Summ. J. at 6). Plaintiff states that the issue in the instant case becomes one of whether Defendant supplied the prosecutor's office and the court with a false version of the facts, causing Mr. Hanner to be charged with various crimes, and therefore, Defendant's reliance on *Coogan* is misplaced. (Pls. Resp. To Def.'s Mtn. for Summ. J. at 6). Plaintiff believes that *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001) and *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2003), are more analogous to the instant matter. In *Darrah*, a protestor was arrested after participating in a demonstration in support of Detroit's unionized newspaper workers. *Darrah v. City of Oak Park*, 255 F.3d 301, 303 (6th Cir. 2001). The

protestor was charged with obstructing a police officer, and a preliminary hearing was held in which the state district court determined that there was probable cause to hold the protestor over for trial. *Id*. at 304-305. The court noted at the preliminary hearing that regardless of the protestor and the police officer's differing accounts of the events, the mere act of pulling an officer while he was lawfully performing his duty was enough to "constitute [ ] ...resisting and obstruction." *Id*. at 305. The protestor was acquitted by a jury of the obstruction charges and filed a claim against the police officer, the City of Troy, and the City of Oak Park for excessive force and malicious prosecution based upon the protestor's claim that the state court's probable cause finding was founded upon the police officer's materially false statements. *Id*.

In *Hinchman*, a driver was pulled over and arrested by a Michigan state trooper after the trooper received a radio dispatch that the driver had assaulted a Livingston County Sheriff's Department officer. *Hinchman*, 312 F.3d at 200. The driver was bound over for trial following a preliminary hearing before a state court judge who found probable cause for the driver's arrest on a charge for felonious assault. *Id*. The driver was acquitted following a jury trial, and filed suit against two Livingston County Sheriff's Department detectives alleging violations of her Fourth and Fourteenth Amendment rights, as well as state law claims of false arrest, false imprisonment, and malicious prosecution. *Id*. at 200-201. In her suit, the driver contended that the detectives had fabricated the facts to establish probable cause. *Id*. at 200.

In both *Darrah* and *Hinchman*, the defendants filed motions for summary judgment. The defendants raised collateral estoppel as an argument in those cases.

As the Supreme Court has held, we must apply the state law of collateral estoppel when deciding whether the state court's determination of probable cause at the preliminary hearing has

7

preclusive effect in [a] § 1983 action. *Darrah*, 255 F.3d at 311 (citing *Haring v. Prosise*, 462 U.S. 306 (1983)). *See also Hinchman*, 312 F.3d at 202 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)).

> Under Michigan law, issue preclusion applies when (1) there is identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated and necessarily determined in the first proceeding, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id*. (citing *People v. Gates*, 434 Mich. 146, *cert. denied*, 497 U.S. 1004 (1990)).

The Sixth Circuit held in *Darrah* and *Hinchman*, that the state court's determination of probable cause at the preliminary hearing was not identical to the issue argued in the subsequent § 1983 claims, that being whether the police officers made materially false statements to the state judge that formed the basis of that court's probable cause determination. *Darrah*, 255 F.3d at 311; *Hinchman*, 312 F.3d at 202. Therefore, collateral estoppel did not apply in these cases.

There appears to be some confusion as to whether or not a state court's probable cause determination at a preliminary hearing collaterally estops a claimant from relitigating the issue in a subsequent § 1983 action. The law of our Circuit provides that where "the state affords an opportunity to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987)). In *Smith*, an automobile owner was arrested when he came out to his automobile and assaulted a person, who he later found out was an officer in the Knoxville Police Department, because he thought that the person was attempting to take his automobile. *Smith*, 136 F.3d at 1073-1074. The police officer struck the

automobile owner, and several other officers joined in the altercation. *Id*. at 1073. The automobile owner was charged with assaulting a police officer, and at a preliminary hearing, the charge was bound over to the Knox County Grand Jury, which did not return an indictment and the charge was dismissed. *Id*. at 1073-1074. The automobile owner filed suit in state court against the police officers under 42 U.S.C. §§ 1983, 1985 alleging constitutional violations and seeking to recover for personal injuries and property damages resulting from his arrest, the search of his vehicle, and his subsequent prosecution. *Id*. at 1074. The Sixth Circuit held that the automobile owner was barred from relitigating in a 42 U.S.C. § 1983 claim that police officers lacked probable cause to arrest him, where the state court held a preliminary hearing on assault charges in which plaintiff's counsel examined several witnesses, plaintiff's counsel moved to dismiss the assault charge, and the court ruled that probable cause existed to bind over the assault charge to the grand jury. *Id*. at 1070-1071.

It appears that *Darrah* and *Hinchman* are more analogous to the instant matter than *Coogan* and *Smith*. The 42 U.S.C. § 1983 claims that were alleged in *Coogan* and *Smith* appear to have no assertion by the plaintiffs that probable cause was found based upon false statements made at the preliminary hearing by the defendants. *See Coogan*, 820 F.3d at 175; *Smith*, 136 F.3d at 1075. In addition, in *Coogan*, the Sixth Circuit stated, "[w]e do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent § 1983 action. Some preliminary hearings are little more than mere formalities." *Coogan*, 820 F.2d at 175.

Turning to *Darrah* and *Hinchman*, both plaintiffs asserted that the police officers gave false statements at the preliminary hearings in order to establish probable cause. *See Darrah*, 255 F.3d at 311; *Hinchman*, 312 F.3d at 202. As mentioned previously, Plaintiff asserts that there are issues of material fact that are in dispute. (Pls. Resp. To Def.'s Mtn. for Summ. J. at 6). Plaintiff asserted

9

that once Defendant was in his vehicle, Defendant requested Plaintiff's driver's licence and DOT card which he produced but that Defendant would not accept. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 39-40). Defendant stated that when he asked for Plaintiff's driver's licence and DOT card, Plaintiff refused and instead responded with an expletive demanding that Defendant remove himself from the Plaintiff's truck. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 20). Defendant also indicated that he asked for Plaintiff's driver's licence and DOT card an additional two times and received the same response. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 20-21). Plaintiff admitted that Defendant asked for his driver's licence and DOT card an additional two times, but asserted that he produced the items, and the Defendant refused to accept them. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 40-41). Defendant indicated that when he then ordered Plaintiff out of the truck, Plaintiff refused to comply. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 21). Plaintiff asserted that when Defendant informed Plaintiff that he was "going to jail," Plaintiff stepped out of the vehicle. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 40-41). Plaintiff asserted that once the Defendant told him that he was arrested, that he followed his instructions. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. A - Dep. of Pls. at 42). Defendant indicated that Plaintiff shoved him and when Defendant attempted to restrain him, Plaintiff resisted. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 37-39). Therefore, this Court finds that Plaintiff has alleged issues of material fact which are in dispute, and collateral estoppel does not bar Plaintiff from asserting his claims against Defendant.

**3. Qualified Immunity**

Defendant asserts that he is entitled to qualified immunity from Plaintiff's excessive force claim. (Def.'s Mtn. For Summ. J. Pursuant to FRCP 56(c) at 17-18). Specifically, Defendant asserts that his actions were objectionably reasonable in his efforts to subdue Plaintiff. (Def.'s Mtn. For Summ. J. Pursuant to FRCP 56(c) at 16-17). Plaintiff asserts that the Defendant is not entitled to qualified immunity, that Defendant exercised excessive force, that his actions were unlawful, and in violation of Plaintiff's Fourth Amendment Constitutional rights. (Pls. Resp. To Def.'s Mtn. for Summ. J. at 9).

When qualified immunity is asserted, the district court must conduct a two-step inquiry. *Hinchman*, 312 F.3d at 205. The first step is to decide whether the complaint alleges a violation of a constitutionally protected right. *Id*. (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). "[T]he next, sequential step is to ask whether the right was "clearly established" at the time of the violation. *Id*. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (citing *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (internal quotation marks and alteration omitted). "Although it need not be the case that the very action in question has been previously held unlawful, in light of pre-existing law, the unlawfulness must be apparent." *Id*.

In analyzing whether or not the Defendant is entitled to qualified immunity, the Court begins by stating that the right to be free from the use of excessive force under the Fourth Amendment is clearly established. *See Adams*, 31 F.3d at 387. The issue is therefore, whether or not the Plaintiff has alleged sufficient facts to indicate what Defendant allegedly did was objectively unreasonable in light of the clearly established constitutional right. *Id*. The Court believes that the Plaintiff has met this burden.

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" analysis when the claim involves searches and seizures. *Darrah*, 255 F.3d at 306. The Sixth Circuit has stated that when reviewing excessive force claims under 42 U.S.C. § 1983:

> the "proper application" of this reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (Citations omitted). This court emphasized that the standard is an objective one without regard to the officers' underlying intent or motivation."

*Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994).

In the instant matter, Plaintiff was pulled over for speeding. (Pls. Resp. To Def.'s Mtn. for Summ. J., Ex. B - Dep. of Def. at 10). Construing the contested facts in the light most favorable to the Plaintiff, the severity of the crime at issue is speeding, and a failure to produce a driver's license and DOT card for which Plaintiff was arrested and alleges injuries. *See also Adams*, 31 F.3d at 385. The Defendant asserts that Plaintiff was resisting arrest. Turning to the next factor in the objective reasonableness standard, Defendant never states in his deposition that he felt threatened by Plaintiff. Defendant does state that the Plaintiff pushed him, a fact that the Plaintiff denies. The testimony of Mr. Marsten, the truck driver, does not totally corroborate the Defendant's version of the facts. Mr. Marsten was not on the scene to see the full interaction of Plaintiff and Defendant. Mr. Marsten arrived onto the scene once Plaintiff and Defendant had fallen into the shallow ditch. Mr. Marsten did not testify that Plaintiff was resisting arrest, he only testified that he saw the Plaintiff and Defendant wrestling on the ground, but knows of none of the facts that led up to their wrestling. (Def's Mtn. For Summ. J. Pursuant to FRCP 56(c), Ex. 2 at 4-5). The question of whether or not excessive force was used by Defendant in making a lawful arrest of Plaintiff is dependent upon

which version of the contested facts are deemed credible.  "Whether Plaintiff was resisting a lawful arrest depends on credibility determinations, the determinations are for the jury, not the court, to make."  *Adams*, 31 F.3d at 384 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255).

It is the province of the jury, not the court, to decide on the credibility of the defendant's account of the need for force.  *Id*.  As the court stated in *Bradenburg v. Cureton*, 882 F.2d 211, 215-216 (6th Cir. 1989):

> This circuit has noted that the question is whether "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.  Although this is purely a legal question to be decided by the court, a court may not be able to make a determination if the exact character of the "actions" that *Anderson* requires the court to consider is unknown.
>
> This court ultimately decides the law to be applied.  In this case, however, the jury becomes the final arbiter of [defendant]'s claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury...

*Id*.

The same is true in the instant matter.  The legal question, immunity, is dependent upon which view of the facts is accepted by the jury.

The Sixth Circuit stated in *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir. 1988), "[I]f the defendant[s] arrested the plaintiff without probable cause, or subjected him to more force than was reasonably necessary under the circumstances, then they are liable for his injuries.  What they believed is not at issue, and they cannot have acted in good faith."  Due to the contested issues of material fact, the jury must decide the issues in regard to qualified immunity.

### 4.  Plaintiff's Supplemental Claims

Based upon the fact that Plaintiff's § 1983 claims have not been dismissed, this Court maintains jurisdiction of Plaintiff's state law claims, false arrest, false imprisonment, and assault and battery under 28 U.S.C. § 1367(a).

## V. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment Pursuant to FRCP 56(c) **[Docket No. 28, filed August 12, 2005]** is DENIED.


Dated: November 16, 2005          /S/ DENISE PAGE HOOD
Detroit, Michigan          UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was served upon Daniel G. Ramano, Esq. and Steven M. Cabadas, AAG on November 16, 2005, by electronic and/or ordinary mail.

         s/William F. Lewis
         Case Manager